IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MOISES ALBARRAN GARCIA                                        PLAINTIFF

v.                                  CIVIL NO. 17-5038

NANCY A. BERRYHILL, Commissioner
Social Security Administration                               DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Moises Albarran Garcia, brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of a decision of the Commissioner of the Social Security

Administration (Commissioner) denying his claims for a period of disability and disability

insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions

of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must

determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision.  See 42 U.S.C. § 405(g).

### I.    Procedural Background:

Plaintiff protectively filed his current applications for DIB and SSI on September 30,

2014, alleging an inability to work since September 1, 2014, due to diabetes, ADHD (attention

deficit hyperactivity disorder), neuropathy, tendonitis, high blood pressure and high

cholesterol. (Tr. 65, 177, 184).  An administrative video hearing was held on September 21,

2015, at which Plaintiff appeared with counsel and testified. (Tr. 38-62).

By written decision dated January 27, 2016, the ALJ found that during the relevant

time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr.

1

13).   Specifically, the ALJ found Plaintiff had the following severe impairments: diabetes

mellitus with peripheral neuropathy; degenerative joint disease (knee); and obesity. However,

after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments

did not meet or equal the level of severity of any impairment listed in the Listing of

Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 15).  The ALJ found

Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except
> that the claimant that the claimant (sic) can occasionally lift and carry 20 pounds
> and frequently lift and carry 10 pounds; the claimant can stand and/or walk
> about 6 hours in an 8-hour workday; and the claimant can sit about 6 hours in
> an 8-hour workday; the claimant can occasionally climb, balance, crawl, kneel,
> stoop, and crouch; the claimant can frequently finger and handle; and the
> claimant must avoid hazards, including unprotected heights and moving
> machinery.

(Tr. 15).  With the help of a vocational expert, the ALJ determined Plaintiff could perform

work as a cleaner/housekeeper, a cashier II, and a sales attendant.  (Tr. 23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on January 31, 2017.  (Tr. 1-4).  Subsequently, Plaintiff filed this action.

(Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report

and recommendation.  (Docs. 11, 12).

The Court has reviewed the entire transcript.  The complete set of facts and arguments

are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Evidence Presented:**

At the administrative video hearing held before the ALJ on September 21, 2015,

Plaintiff testified that he was thirty-eight years of age and had obtained a high school education.

(Tr. 41, 43).  Plaintiff's past relevant work consists of work as floor cleaner and a forklift

operator. (Tr. 59).  Prior to the relevant time period, Plaintiff sought treatment for various

impairments to include, but not limited to diabetes mellitus, a depressive disorder, gastroesophageal reflux disorder (GERD), and back pain.

The pertinent medical evidence during the relevant time period reflects the following. On September 15, 2014, Plaintiff was seen at the Community Clinic by Mitchell Atkins, APRN. (Tr. 302). Plaintiff complained of stomach pain for the past two weeks, mainly with meals. Plaintiff described the pain as burning in the pit of his stomach. Upon examination, Nurse Atkins noted Plaintiff's abdomen was normal without tenderness to palpation. Plaintiff was assessed with generalized abdominal pain.

On September 23, 2014, Plaintiff entered the Mercy Hospital Northwest Arkansas emergency room complaining of abdominal pain. (Tr. 373-392). Plaintiff reported that he had experienced right-sided abdominal and epigastric pain for a couple of weeks, and the pain was progressing. Plaintiff indicated that his pain increased with oral intake. Plaintiff also complained of intermittent nausea and vomiting. The review of symptoms was negative for myalgias, back pain, dizziness, lightheadedness, headache, confusion or decreased concentration. Upon examination, Dr. Bradley Shane Holland noted Plaintiff was oriented to person, place and time and in no distress. Plaintiff's neck had a normal range of motion. Tenderness was noted in the right upper abdominal quadrant and epigastric region. Plaintiff had no CVA (costovertebral angle) tenderness. A musculoskeletal exam revealed normal range of motion with no edema or tenderness. Plaintiff was found to have a normal mood and affect. Plaintiff was diagnosed with acute abdominal pain and epigastric abdominal pain. Plaintiff was prescribed medication and discharged.

On October 18, 2014, Plaintiff entered the Mercy Hospital Northwest Arkansas emergency room complaining of abdominal pain following a motor vehicle accident. (Tr. 445-

455).  Plaintiff was driving at the time of the accident. Plaintiff denied experiencing fatigue, arthralgias, myalgias, dizziness, tingling, loss of consciousness, light headedness, numbness or headaches.  Plaintiff denied experiencing confusion or decreased concentration. After an examination of Plaintiff, lab work and studies, Dr. Holland assessed Plaintiff with acute abdominal pain.

On October 20, 2014, Plaintiff was seen by Dr. Marianela Lavena for a follow-up after his motor vehicle accident the previous Friday.  (Tr. 439-440).  Plaintiff reported he did not have pain at the time of the accident, but developed pain early on Saturday and went to the emergency room.  Plaintiff reported a worsening of his pain.  Plaintiff reported he was given hydrocodone in the emergency room, but was not taking it because it caused him to vomit. Plaintiff reported he had not been bothered by feeling down, depressed or hopeless over the previous two weeks.  Plaintiff reported he had not had a bowel movement since the accident. After examining Plaintiff, Dr. Lavena diagnosed him with generalized abdominal pain and Ilues, NOS.

Later on October 20, 2014, Plaintiff entered the Mercy Hospital Northwest Arkansas emergency room complaining of abdominal pain and nausea.  (Tr. 456-477).  Plaintiff denied back pain or fatigue. Plaintiff was diagnosed with acute appendicitis and underwent an appendectomy.

On October 30, 2014, Dr. Karmen Hopkins, a non-examining medical consultant, opined that Plaintiff did not have a severe physical impairment. (Tr. 70-71). After reviewing additional medical records, Dr. Patrick Fields affirmed Dr. Hopkins' assessment on March 18, 2015.  (Tr. 92-93).

On December 2, 2014, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Terry L. Efird. (Tr. 403-406). Plaintiff reported that he applied for disability benefits secondary to "it's hard for me to concentrate on one thing." Plaintiff reported having had a motor vehicle accident the previous month. Plaintiff reported his mental symptoms fluctuated over time. Dr. Efird noted that Plaintiff indicated he could perform basic self-care tasks independently. Plaintiff reported that his ability to perform activities of daily living adequately was impaired by problems with his legs. Plaintiff reported he had primarily worked as a forklift driver. Dr. Efird diagnosed Plaintiff with a depressive disorder.

With respect to adaptive functioning, Dr. Efird noted Plaintiff's driver's license had been suspended after a motor vehicle accident earlier in the year. Plaintiff reported that he could shop independently with a list. Plaintiff reported his ability to perform activities of daily living was impaired by problems with his leg at times. Plaintiff reported that he visited with his family on the weekends. Plaintiff was able to communicate in a reasonably social, adequate manner. Dr. Efird opined that Plaintiff had the capacity to perform the basic cognitive tasks required for basic work like activities. Dr. Efird noted Plaintiff had no remarkable problem with persistence, and could perform basic work likes tasks within a reasonable time frame.

On December 4, 2014, Christal Janssen, Ph.D, a non-examining medical consultant, completed a mental RFC assessment opining that Plaintiff did not have a severe mental impairment. (Tr. 71-72). After reviewing additional medical records, Dr. Abesie Kelly affirmed Dr. Janssen's assessment on March 24, 2015. (Tr. 94).

On January 12, 2015, Plaintiff was seen by Dr. Marsha Taylor. (Tr. 435-438). Plaintiff reported stomach pain that radiated into his back when laying down. Plaintiff reported the pain

sensation was worse with drinking water, belching or taking a deep breath.  Plaintiff denied experiencing dizziness, weakness, seizures, headaches, numbness or tingling.  After examining Plaintiff, Dr. Taylor diagnosed him with epigastric abdominal pain.

On January 19, 2015, Plaintiff was seen by Dr. Taylor.  Plaintiff presented for a follow-up for his epigastric abdominal pain. (Tr. 429-432, 478-479). Dr. Taylor noted a recent CT scan of the abdomen revealed circumferential bowel wall thickening involving the duodenum and proximal jejunum which was suspicious for an infections enteritis.  At that time, Plaintiff was started on an antibiotic and his pain resolved.  Plaintiff reported he really was not following a diabetic diet and some days wanted to eat all the foods he should not eat. Plaintiff reported that he was depressed due to his health and work situation.  After examining Plaintiff, Dr. Taylor assessed Plaintiff with epigastric abdominal pain, diabetes mellitus type II and major depression.  Dr. Taylor noted that she would refer Plaintiff to be seen by behavioral health.

On January 19, 2015, Plaintiff was seen at the Behavior Health Clinic. (Tr. 427-428). Plaintiff reported that he felt a lot of pressure at home.  Plaintiff reported he lost his job in August, and became angry easily and was having concentration difficulties.  Plaintiff reported that he felt like a failure because his wife was working and he was not.  Plaintiff indicated that he filed for disability. Mr. Juventine Rodriguez diagnosed Plaintiff with depression.

On January 21, 2015, Plaintiff entered the Mercy Hospital Northwest Arkansas emergency room with complaints of generalized body aches that caused him to feel like he could not get a good breath. (Tr. 480-491).  A review of systems revealed Plaintiff was positive for a cough, shortness of breath, and myalgias.  Plaintiff was negative for neck stiffness and headaches. Upon examination, Plaintiff was found to have a normal range of motion of the

6

neck and musculoskeletal system; normal coordination; and normal mood, affect, judgment and thought content. Plaintiff had no abdominal tenderness and normal breath sounds. Plaintiff was diagnosed with an upper respiratory infection and type II diabetes mellitus without complication.

On January 26, 2015, Plaintiff was seen by Dr. Lavena for a follow-up for his epigastric abdominal pain. (Tr. 424-426). Plaintiff reported the pain was exacerbated by exercising and laying down. Plaintiff complained of a headache and generalized body aches. Dr. Lavena noted Plaintiff tested negative for the flu three days ago. Plaintiff was diagnosed with epigastric abdominal pain, diabetes mellitus type II, major depression, diarrhea, and hyperlipemia.

On January 29, 2015, Plaintiff was seen by Dr. Lavena for arm pain. (Tr. 421-423). Plaintiff reported a loss of strength in his left arm and hand. Plaintiff also reported stomach pain and burning in his upper back. Dr. Lavena noted Plaintiff's report of improvement of his epigastric pain since starting on a medication. Plaintiff reported that his shoulder and left side of his neck were bothering him. Plaintiff was diagnosed with epigastric abdominal pain, diabetes mellitus type II, major depression, diarrhea, hyperlipemia, and unspecified joint pain.

On February 9, 2015, Plaintiff was seen by Dr. Lavena for a lab review. Dr. Lavena noted Plaintiff had been seen in another facility and was diagnosed with H pylori and that he was feeling better. (Tr. 415-417). Plaintiff denied feeling down, depressed or hopeless over the past two weeks. Dr. Lavena noted Plaintiff was on Metformin for his diabetes and that he reported he would start watching his diet. Upon examination, Plaintiff was noted to have tenderness in his left shoulder but had full range of motion with pain. Plaintiff was diagnosed

7

with epigastric abdominal pain, diabetes mellitus type II, major depression, diarrhea, hyperlipemia, unspecified joint pain and GERD.  Plaintiff was prescribed medication.

On February 19, 2015, Plaintiff was seen by Dr. Taylor. Plaintiff was in for a follow-up for his medication.  (Tr. 411-414).  Plaintiff reported he was feeling better after taking medication for depression.  Plaintiff complained of lower back pain for the past three days. Plaintiff denied feeling down, depressed or hopeless over the past two weeks.  With respect to his back pain, Plaintiff reported that he woke up with this pain three days ago and denied any injury.  Plaintiff denied experiencing numbness or tingling in his extremities.  Plaintiff reported some relief with his pain medication.  Plaintiff also reported he was sleeping better and that his mood was greatly improved.  Plaintiff reported he felt happier and not so sad about his life. Plaintiff was also pleased with his weight loss. After examining Plaintiff, Dr. Taylor diagnosed Plaintiff with sciatica and depression.  Plaintiff was given an injection for his sciatica and instructed to perform gentle stretching exercises.  Plaintiff was instructed to continue to use the pain medication he had at home.

On June 22, 2015, Plaintiff was prescribed physical therapy for degenerative joint disease of the lower leg.  (Tr. 495-505).

On October 29, 2015, Plaintiff underwent a consultative general physical examination performed by Dr. Robert Karas.  (Tr. 507-513).  Plaintiff reported that he was diagnosed with diabetes ten years ago, and had to constantly check his blood sugar and watch his diet.  Plaintiff reported experiencing chronic headaches, ADHD, neuropathy, tendonitis, high blood pressure and high cholesterol.  Plaintiff reported he could walk one block before experiencing dyspnea and could lift two pounds. Upon examination, Dr. Karas noted Plaintiff had full range of

8

motion in his spine and extremities.  A limb function evaluation revealed Plaintiff could hold

a pen and write, touch fingertips to palm, oppose thumb to fingers, pick up a coin, stand/walk

without assistive devices, and walk on heel and toes but could not squat/arise from a squatting

position.  Plaintiff was found to have a one hundred percent grip strength bilaterally.  Dr. Karas

noted that Plaintiff felt like he was being followed.  Dr. Karas diagnosed Plaintiff with

hypertension, high cholesterol, diabetes mellitus with neuropathy, obesity and ADHD.  Dr.

Karas opined Plaintiff had mild limitations with walking.

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th

Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable

mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must

be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314

F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that

supports the Commissioner's decision, the Court may not reverse it simply because substantial

evidence exists in the record that would have supported a contrary outcome, or because the

Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th

Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent

positions from the evidence and one of those positions represents the findings of the ALJ, the

decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the

burden of proving his disability by establishing a physical or mental disability that has lasted

at least one year and that prevents him from engaging in any substantial gainful activity.

9

Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A).

The Act defines "physical or mental impairment" as "an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

A Plaintiff must show that his disability, not simply his impairment, has lasted for at least

twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation

process to each claim for disability benefits: (1) whether the claimant has engaged in

substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical

and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet

or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from

doing past relevant work; and, (5) whether the claimant is able to perform other work in the

national economy given his age, education, and experience.  See 20 C.F.R. §§ 404.1520,

416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age,

education, and work experience in light of his residual functional capacity.  See McCoy v.

Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.     Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ did not include all of

Plaintiff's impairments, limitations, and restrictions in the hypothetical questions posed to the

vocational expert concerning whether Plaintiff could return to relevant past work or perform

any potential work and therefore, the vocational expert's hypothetical cannot constitute

substantial evidence to support a conclusion of no disability; 2) the ALJ committed reversible

error when he selected the medical opinions of two non-examining state consultants over two

examining physicians who provided consistent opinions regarding Plaintiff's impairments; and 3) the ALJ failed to fully and fairly develop the record when he found Plaintiff could perform the full range of light work while ignoring the evidence of, and the effects of, his chronic migraines on his ability to perform light work.[1]

### A.    Fully and Fairly Develop the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011). After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B.    Subjective Complaints and Credibility Analysis:

We now address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4)

---

[1] The Court has reordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner

dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record reveals that during the relevant time period, Plaintiff was able to walk his children to and from school, to do simple household chores slowly, to take care of his personal needs, to prepare simple meals, to sometimes mow the lawn, to shop and to attend church and visit with family. (Tr. 246-253). In December of 2014, Plaintiff reported to Dr. Efird that he could take care of his personal needs; could shop independently with a list; and could perform activities of daily living adequately but noted this ability was sometimes impaired due to problems with his legs. (Tr. 403-406).

With respect to Plaintiff's alleged impairments, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain).

Therefore, although it is clear that Plaintiff suffered with some degree of limitation, he did not establish that he was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's

12

conclusion that Plaintiff's subjective complaints were not totally credible for the time period in question.

### C.     The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In determining that Plaintiff maintained the RFC to perform light work with limitations, the ALJ considered the medical assessments of the examining and non-examining agency medical consultants; Plaintiff's subjective complaints; and his medical records.  The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions.  Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject

the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Plaintiff's capacity to perform light work with limitations is further supported by the fact that Plaintiff's examining physicians placed no restrictions on his activities that would preclude performing the RFC determined during the relevant time period.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).  After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

### D.    Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a cleaner/housekeeper, a cashier II, and a sales attendant.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V.    Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal**

14

**questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of March 2018.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE